AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

for the

District of New Mexico

JUL 3 0 2015  KH

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
219 Pine St SE Albuquerque, NM 87106, a beige colored
multiunit structure

)
)
)
)
)
)

Case No.  15 MR 483

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
219 Pine St SE Albuquerque, NM 87106, a beige colored multiunit structure with "219", "217", "215", and "213" marked along the front of the structure.  219 Pine is accessed via southern door, ground level, off the alley

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attached Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1708, 1028, 1704, 1718, 1344,1029 | Theft or receipt of stolen mail matter generally, Identity theft, Keys or locks stolen or reproduced, Bank fraud, and Fraud and related activity in connection with access devices |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

B. Specht, United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  7/30/15

_____
*Judge's signature*

City and state:  Albuquerque, NM

United States Magistrate Judge William P. Lynch
*Printed name and title*

STATE OF NEW MEXICO   §
                            §
COUNTY OF BERNALILLO §

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brad Specht, being duly sworn, depose and state as follows:

1.      I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS"), currently assigned to the Albuquerque Domicile, and have been so employed since February 2012. During that time, I have been trained to work on numerous federal criminal investigations. I have worked with other inspectors, agents, police officers, and law enforcement personnel who have extensive criminal investigative experience and training.

### Search Warrant

2.      I make this Affidavit in support of a search warrant application for the residence located at 219 Pine St SE Albuquerque, NM 87106. This is one unit in a multi-unit building, a beige colored structure with 4 units including a basement. The numbers "219", "217", "215", and "213" are displayed on the front of the structure. 219 Pine St SE Albuquerque, NM 87106, the unit for which authorization to search is sought, is accessible from the south side of the structure, on the ground level, off of the alley.

3.      The structure in which 219 Pine St SE is located appears to contain 4 distinct units with a separate entrance to each unit. There appears to be no internal connection between the units of the structure.

4.      The facts set out below establish probable cause to believe that the items described in the Attachment B will be found within the residence. Based on the facts set out below, I believe that said property constitutes evidence of the commission of a federal criminal offense, namely, 18 U.S.C. § 1708, Theft or receipt of stolen mail matter generally, 18 U.S.C. § 1028, Identity theft, 18 U.S.C. § 1704, keys or locks stolen or reproduced, 18 U.S.C. § 1344, Bank fraud, and 18 U.S.C. § 1029, Fraud and related activity in connection with access devices. Said property also constitutes contraband, the fruits of the above criminal offense, things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing the above criminal offense or as a result of the

**Affidavit - Page 1**

criminal offense.

5.     The grounds for issuance of the search warrant are derived from my review of the evidence, discussions with participating agencies, and interviews of persons who have personal knowledge of the events described herein.  This affidavit is limited in scope to the information relevant to show there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## The Investigation

6.     On or about May 1, 2015, I was contacted by DEA SA S. Hartz and ATF SA B. Garcia regarding a mail theft issue.  ATF has a Confidential Source (CS) that provided information regarding 2 individuals that are stealing mail in the University area of Albuquerque, NM.  The CS provided the following information:

   a.     Dan LNU (Last Name Unknown) and Allie LNU, a white male and white female couple live in the area of University and Gold in Albuquerque, New Mexico.  The CS stated that the couple steals from mailboxes in that area on a nightly basis utilizing a genuine U.S. Postal Arrow Key that they have.  CS stated that the couple will also make and sell copies of the arrow key.  Dan LNU and Alley LNU will walk the area around their house to access mailboxes with the arrow key as they do not possess a vehicle.  The CS, along with ATF agents, drove through the University and Gold area and the CS identified the house referenced above as 219 Pine St SE Albuquerque, NM 87106, and that the entrance is located on the south side of the structure, off of the alley.  The CS also stated Dan LNU and Allie LNU make fake identifications for people.  The CS stated Allie LNU has a computer system that can print what is needed to make the IDs.  The CS stated the couple will supply New Mexico Driver's Licenses, Social Security cards with new SSNs, credit reports that match the fake identifications, and additional options.  The CS stated Allie LNU does all of that from where the couple lives.  The CS stated Dan LNU and Allie LNU are "tweakers" and drug addicts.  The CS provided three phone numbers for the subjects; Dan

**Affidavit - Page 2**

LNU \*\*\*-\*\*-5958, and Allie LNU \*\*\*-\*\*-8425 and \*\*\*-\*\*-8663. The CS told agents that he has 2 counterfeit arrow keys that Dan LNU and Allie LNU had given to him.

    b.   Through my investigation I have found that Dan LNU and Allie LNU are likely to be Daniel McLaughlin and Alexandrea Todd.

7.     DEA SA Hartz issued a subpoena for the phone numbers referenced above and has received 2 responses. The phone number \*\*\*-\*\*-5958 is a Sprint phone and is registered to Daniel McLaughlin 217 Pine St Albuquerque, NM 87106. The phone number \*\*\*-\*\*-8663 is a Cricket phone and is registered to Stephan Todd 223 Pine St SE Albuquerque, NM 87106. According to CLEAR database check Stephan Todd and Alexandrea Todd have shared the address of 223 Pine St Se Albuquerque, NM 87106, and based on Stephen Todd's age, it is suspected that he is Alexandrea Todd's father.   Based upon my training and experience I know that criminals engaged in mail and identity theft will often times try and conceal their identities and the location of their residences. It would not be uncommon for McLaughlin to use 217 Pine St SE as his address as the mailbox for 217 Pine and 219 Pine are adjacent to one another and are unsecured, giving him access to the mail in either box.

8.     Surveillance was conducted on 219 Pine St SE Albuquerque, NM 87106, over several days. On multiple occasions, individuals matching the description of McLaughlin and Todd are seen going into and out of the door for the residence located at 219 Pine St SE Albuquerque, NM 87106. Specifically the following was seen:

    a.   On June 2, 2015, at approximately 11:00 PM a vehicle arrives at the residence bearing University of New Mexico License Plate 17990. A male exits the vehicle and enters the residence. Approximately two minutes later the same male exits the residence and leaves the area. A records check shows that this vehicle belongs to Thomas Adams. Mr. Adams was arrested in 2010 by U.S. Postal Inspectors for mail theft and possession of a counterfeit U.S. Postal Service Arrow Key. The male seen in surveillance matches the description of Mr. Adams.

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

b.  On June 22, 2015, at approximately 2:50 AM a female matching the description of Alexandrea Todd exits the residence with what appears to be a U.S. Postal Service Mail Tub, she takes it to the trash can and re-enters the residence with the tub.  These tubs are the property of the U.S. Postal Service and are to be used in the processing/handling of U.S. Mail.

c.  Through surveillance individuals matching the description of Alexandrea Todd and/or Dan McLaughlin have been seen exiting and leaving the residence on the following dates and times:

    i.   June 6, 2015, approximately 05:18

    ii.  June 7, 2015, approximately 00:48 and 01:58

    iii. June 8, 2015, approximately 21:36 and 22:47

    iv.  June 15, 2015, approximately 02:48 and 06:58

    v.   June 16, 2015, approximately 23:12

    vi.  July 29, 2015, approximately 11:27

d.  Over the course of all the surveillance conducted on 219 Pine St SE Albuquerque, NM 87106, I have not seen the individuals matching the description of McLaughlin or Todd enter or approach the entrance of 217 Pine St SE.  The one individual that I have seen enter and leave 217 Pine St SE is a male, Caucasian, in his 40s and does not match the description of anyone involved in the case up to this point in time.

9.  On June 10, 2015, I conducted a trash pull for the address of 219 Pine St SE Albuquerque, NM 87106.  I had previously checked with the city of Albuquerque and 219 Pine St SE is not the listed service address, the listed service address is 215 Pine St SE Albuquerque, NM for the entire residential structure.  When I conducted the trash pull there were 2 black collection bins and 1 recycling bin out front of the structure where 219 Pine St SE Albuquerque, NM, is located.  The contents of the three bins were collected for review.  Upon sorting through the trash collected I found several white trash bags that contained what appear to be several hundred pieces of mail and items derived from mail.  The following is a partial list of what was found within the trash:

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

a.   An 8.5 x 11 sheet of white paper with several color copies of a New Mexico Driver's License with the name (with an extra letter), Social Security Number, and Date of Birth and, of D. Tapia. These copies bear a photograph that matches the photograph on file with the New Mexico Motor Vehicle Division for Alexandrea Todd's Drivers License.

b.   A Bank of America letter accompanying a debit/credit card issued to L. Reeves of Albuquerque, NM reference card ending in *1693, with no card attached.

c.   A Discover letter accompanying a debit/credit card issued to N. Nalla of Albuquerque, NM, with no card attached.

d.   A Wells Fargo letter accompanying a debit/credit card issued to K. Gleason of Albuquerque, NM, with no card attached.

e.   A Netspend letter accompanying a debit/credit card issued to J. Tsosie of Albuquerque, NM, with no card attached.

f.   A Netspend letter accompanying a debit/credit card issued to E. Seiler of Albuquerque, NM, with no card attached.

g.   A State of New Mexico Health and Human Services letter accompanying an EBT card issued to H. Rodriguez of Albuquerque, NM, with no card attached.

h.   A State of New Mexico Health and Human Services letter accompanying an EBT card issued to S. Flores of Albuquerque, NM, with no card attached.

i.   A Wells Fargo letter accompanying a debit/credit card issued to N. Martinez of Albuquerque, NM, with no card attached.

j.   A Wells Fargo letter accompanying a debit/credit card issued to F. Martinez of Albuquerque, NM, with no card attached.

k.   A Wells Fargo letter accompanying a debit/credit card issued to S. Gomez of Albuquerque, NM, with no card attached.

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

l.   A Bank of America letter accompanying a debit/credit card issued to S. Hall of Albuquerque, NM reference card ending in *6328, with no card attached.

m.   A Wells Fargo letter accompanying a debit/credit card issued to R. Meck of Albuquerque, NM, with no card attached.

n.   A Wells Fargo letter accompanying a debit/credit card issued to S. King of Albuquerque, NM, with no card attached.

o.   A USAA letter accompanying  debit/credit card ending in *5823 issued to J. Geddings of Albuquerque, NM.

p.   2 Bank of America check books for account ending *0593 for A. Barnes of Albuquerque, NM.

q.   4 Discover Bank check books for account ending *2612 for U. Chintamaneni of Albuquerque, NM.

r.   4 Discover Bank check books for account ending *8897 for P. Bollampalli of Albuquerque, NM.

s.   Bank of America Cred/Debit card issued to M. Hristov ending in *5331.  Bank of America reported that several transactions in February 2015 were suspected to be fraudulent.  The transactions occurred mainly in Albuquerque, NM and the estimated loss is in excess of $2,000.  Several of the transactions occurred at retailers within walking distance of 219 Pine St SE Albuquerque, NM 87106.

10.   In addition to the above listed items found in the trash pull a check drawn off of Bank of New York Mellon (BNY Mellon) was also located.  The check bore an account number ending in *655 and was issued by Celeron Contractors, L.L.C.  Research conducted indicates that this is a fictitious business with a fictitious address.  The check was made payable to Jeremy Trujillo in the amount of $499.82.  The check was printed on 8.5" x 11" check stock.  I contacted BNY Mellon and spoke with a fraud investigator that confirmed the account number listed on the check belonged to Verizon Financial Services.  He stated the check listed above had been attempted to be cashed on June 7, 2015, at approximately 2: 32 PM at Walmart Store # 0831 located at 301 San Mateo SE Albuquerque, NM 87108. I spoke with the Assets Protection Department at the Walmart listed above and they confirmed the check was negotiated at the store.  From video surveillance a male, in his late 20's, with medium tone skin,

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

presents the check for negotiation and hands the cashier what appears to be a New Mexico Driver's License.

11.    Also found within the trash obtained during the trash pull was a Post-It Note with the personally identifying information of F. Casias. The information included New Mexico Driver's License number and expiration date, mother's maiden name, residence history, employment information, date of birth and social security number. This note was sent to the U.S. Postal Inspection Service Forensic Laboratory for latent fingerprint analysis. The Forensic Lab reported that they found 2 latent fingerprints matching those of Daniel McLaughlin and 1 latent fingerprint matching that of Alexandrea Todd on the above described note. The fingerprints for Todd and McLaughlin were obtained from the FBI as both individuals have prior arrest records.

12.    I checked with the Albuquerque Police Department and they have a report from F. Casias on March 15, 2015, stating that she has been the victim of identity theft. Ms. Casis reported the following information to the Albuquerque Police Department: Best Buy had contacted Ms. Casias as they had a female in their store attempting to use a Best Buy Credit Card and New Mexico Driver's License with Ms. Casias' information to purchase electronics. The Driver's License had Ms. Casias' information on it but had the photograph of the individual attempting to make the purchase. Ms. Casias also reported that this same individual had been to other locations across the city attempting to use her information to make fraudulent purchases.

13.    According to information obtained from the Albuquerque Police Department, Alexandrea Todd admitted in 2007 to forging checks in order to pay bills. Todd also has a criminal arrest history of possession of methamphetamine. Based upon my training an experience I know that the use of methamphetamine often correlates with the crime of mail theft as users of methamphetamine try to financially support their habit with proceeds from stealing U.S. Mail.

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

14.    According to information available to law enforcement, Daniel McLaughlin has a criminal arrest history of DWI, theft of a motor vehicle, providing false information, breaking and entering, shoplifting and receiving stolen property.

15.    Based on the items recovered from the trash approximately 230 items containing an addresses were identified and are shown on the map below marked with a green pushpin:



Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

The highest concentration of addresses is in and around the area of 219 Pine St SE, as shown below:



16.    A check of Pawn Shop transactions shows that Alexandrea Todd has pawned approximately 88 items from on or about July 9, 2013 through April 17, 2015. All of the transactions were conducted at University Pawn 1418 Central Ave SE Albuquerque, NM 87106, which is within walking distance of 219 Pine St SE Albuquerque, NM 87106. Items that were pawned include a number of Gift Cards, Electronics and Jewelry. Based upon my training and experience individuals that obtain such items via theft or fraud will often pawn or otherwise sell the items in order to quickly generate cash.

17.    Based on my experience into the investigation of mail theft, identity theft, and bank fraud, and based on the collective experience of other Postal Inspectors and law enforcement officers assigned to investigate these matters, I know that people involved in these activities often use cellular telephones to communicate with other co-conspirators, contact financial institutions as well as access email and the internet in order to further the scheme. They use cellular phones to contact financial institutions, retailers, and criminal associates, as well as accessing the internet. Based on my training and

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

experience, I know that people involved in the type of criminal activity described in this affidavit often use computers to make counterfeit identification documents, checks, vehicle titles, and insurance cards and will maintain records such as financial documents, including bank statements, at their personal residences. They also use computers to visit Internet sites to obtain and verify victim information, and to maintain records and information related to victims, accounts, and criminal associates as well as apply for credit facilities utilizing victims identifying information. It has been my experience that account numbers, routing numbers, victim information, bank logos and check writing and identification producing software are often found on their computers and storage devices. I am also aware that persons who commit mail theft often maintain handwritten and computer generated records and/or documents reflecting the names and identities of their victims and co-conspirators, such as credit cards, debit cards, bank cards, social security cards, card numbers and expiration dates, personal identification numbers ("PIN") and photo identification. Based on my knowledge, training, and experience, I know that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct respects: (1) the items themselves may be instrumentalities, fruits, and/or evidence of crime; and/or (2) items may have been used to collect and store information about crimes (in the form of electronic data).

18.   As described above, this application seeks permission to search and seize records that might be found at 219 Pine St SE Albuquerque, NM 87106, in whatever form they are found. I submit that if a computer, computer hard drive, or other physical object upon which computer data can be recorded, or electronic communication devices including cellular telephones and tablets, (hereinafter, "COMPUTER(S)") is found on the premises, there is probable cause to believe those records will be stored in that computer, for at least the following reasons:

   a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the internet. Electronic files downloaded onto a hard drive can be stored for years

**Affidavit - Page 10**

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

at little or no cost.  Even when files have been deleted, they can be recovered months or years later using readily available forensics tools.  This is so because when a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, the data remains on the hard drive until it is overwritten by new data.

      b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the hard drive that is not currently being used by an active file-for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.   Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

      d.   Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to those files, and the files are only overwritten when they are replaced with more recently viewed internet pages or if a user takes steps to delete them.

19.    This application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any computer located at 219 Pine St SE Albuquerque, NM 87106, because:

a. Data on the computer can provide evidence of a file that was once on the computer but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the computer that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the computer that can reveal information such as online nicknames and passwords. Operating systems can record additional information such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with the appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a computer that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the

**Affidavit - Page 12**

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a computer. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

20.     In most cases, a thorough search of a premise for information that might be stored on computers often requires the seizure of those computers and later off-site review consistent with the warrant. In lieu of removing computers from the premises, it is sometimes possible to make an image copy of the computer. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the computer, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination; as noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine computers to obtain evidence. Computers can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirement; computers can be configured in several different

**Affidavit - Page 13**

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tolls or knowledge will be required to analyze the system and its data on the premises. However, taking the computers off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.    Variety of forms of electronic media; records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

21.    Based on the foregoing, and consistent with Rule of Criminal Procedure 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the computer on-site, the warrant I am applying for would permit seizing or imaging computers that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant. The examination may require techniques, including but not limited to computer-assisted scans of the entire computer, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

22.    Based on my training and experience, I use the following technical terms to convey the following meaning:

    a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone or smart phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning systems ("GPS") technology for determining the location of the device.

23.     Additionally, based upon my knowledge, training, and experience, I am aware that persons engaged in theft and fraudulent activities to include mail theft commonly maintain records on or use their cellular phones to further their scheme.  Further, based upon my knowledge, training, and experience, I am aware that cellular phones may be important to a criminal investigation in that the items themselves (cellular phones) may be instrumentalities, fruits, and/or evidence of crime; and/or the items may have been used to collect and store information about the crimes.

24.     In my training and experience, examining data stored on cellular phones can uncover, among other things, evidence that reveals or suggests who possessed the computer.  Based on my training and experience, I know that computers can store information for long periods of time.

25.     Based on the foregoing, and consistent with Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the computer consistent with the warrant.  The examination may require authorities to employ techniques, including, but not limited to computer-assisted scans of the entire computer, that might expose many parts of the computer to human inspection in order to determine whether it is evidence described in the warrant.  Therefore, permission is requested to seize the computers located at 219 Pine St SE Albuquerque, NM 87106, and transport the computers to a laboratory environment as described to conduct a search of the computers.

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

**Conclusion**

26.     Based on the above described investigation, I believe probable cause exists to believe that there is located within the premises described as 219 Pine St SE Albuquerque, NM 87106, evidence, fruits and instrumentalities of a violation of 18 U.S.C. § 1708, Theft or receipt of stolen mail matter generally, 18 U.S.C. § 1028, Identity theft, 18 U.S.C. § 1704, keys or locks stolen or reproduced, 18 U.S.C. § 1344, Bank fraud, and 18 U.S.C. § 1029, Fraud and related activity in connection with access devices. Specifically, I believe, based on my training and experience, that there will be evidence consisting of mail matter addressed to individuals other than the occupants of the residence, computers, identification documents, and bank checks which may or may not have been altered from their originals, amongst other items. Therefore, I seek permission to enter the premises in order to search for and recover evidence, fruits, and instrumentalities of the aforementioned crime, as described in Attachment B.

**Brad C. Specht**
U.S. Postal Inspector

Subscribed and sworn to before me on this _____ day of July, 2015, at __8:18__ a.m./p.m.

Hon. William P. Lynch
**UNITED STATES MAGISTRATE JUDGE**

**Affidavit - Page 16**

Reviewed by Jonathon Gerson, Supervisory Assistant US Attorney

ATTACHMENT A





The residence is located at 219 Pine St SE Albuquerque, NM 87106. This is one unit in a multi-unit building, a beige colored structure with 4 units including a basement. The numbers "219", "217", "215", and "213" are displayed on the front of the structure. 219 Pine St SE Albuquerque, NM 87106, the unit for which authorization to search is sought, is accessible from the south side of the structure, on the ground level, off of the alley. 219 Pine St SE Albuquerque, NM 87106, is located on the west side of Pine St SE.

The search of this location shall include all rooms, annexes, attics, basements, garages, mailboxes, trash containers, debris boxes, storage lockers and areas, cabinets, rooms, covered porches, sheds and out buildings associated with and under control of the residents of 219 Pine St SE Albuquerque, NM 87106,.

The search of this location shall also authorize officers conducting the search to require the production of identification of any person reasonably believed by the officers to have possession and control of the premises of 219 Pine St SE Albuquerque, NM 87106. The search shall also authorize

officers to search the persons and items attached to them (such as purses, backpacks etc.) encountered inside of 219 Pine St SE Albuquerque, NM 87106.

Any computer, computer hard drive, or other physical object upon which computer data can be recorded, or electronic communication devices including cellular telephones and tablets, (hereinafter, "COMPUTER(S)") as well as the electronically stored contents of such computers, that relate to the violations of 18 U.S.C. § 1708, Theft or receipt of stolen mail matter generally, 18 U.S.C. § 1028, Identity theft, 18 U.S.C. § 1704, keys or locks stolen or reproduced, 18 U.S.C. § 1344, Bank fraud, and 18 U.S.C. § 1029, Fraud and related activity in connection with access devices.  This warrant authorizes the forensic examination of the Computer(s) for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. Any and all mail matter addressed from or to individuals other than the residents of 219 Pine St SE Albuquerque, NM 87106;

2. Any and all documents, records, notes, data, and computer logs bearing identifying information including but not limited to names, addresses, date of birth, Social Security numbers, driver license numbers, employment information, phone numbers, relatives, and references;

3. Any and all stolen, counterfeit, and/or fraudulently obtained identification documents, including but not limited to driver licenses and identification cards;

4. Any and all U.S. Postal Service Arrow Keys, locks, or counterfeit keys, any materials used to make such counterfeits including but not limited to small pieces of metal or metal like material, dremel or other power or hand tools, drawings or templates used to create counterfeit copies;

5. Any and all materials used to alter identification documents or produce counterfeit identification documents, including but not limited to digital cameras, computers, storage devices, scanners, printers, signature pads, laminators, card stock, and New Mexico holograms;

6. Any and all materials used to make counterfeit checks including but not limited to computers, storage devices, scanners, printers, signature pads, check stock, ink, and check writing software;

7. Any and all financial instruments bearing the name of any of the victims listed in the affidavit, or to individuals that do not reside at 219 Pine St SE Albuquerque, NM 87106;

8. Any and all materials including but not limited to letters, correspondence, journals, records, notes, data and computer logs bearing victim information and/or other information related to or pertaining to, identity theft, bank fraud, access device fraud, mail theft, and conspiracy;

9. Any and all items that can positively be associated with mail matter that is addressed to any of the victims named in the affidavit, or to any person other than individuals residing at 219 Pine St SE Albuquerque, NM 87106;

10. Any and all written or printed material which provides instructions or examples concerning the operation of the computer systems, computer software and/or any related device, and sign-on passwords, encryption codes or other information needed to access the computer system and/or software programs;

11. Any computer, computer hard drive, or other physical object upon which computer data can be recorded, or electronic communication devices including cellular telephones and tablets, (hereinafter, "COMPUTER(S)") as well as the electronically stored contents of such computers, that relate to the violations of 18 U.S.C. § 1708, Theft or receipt of stolen mail matter generally, 18 U.S.C. § 1028, Identity theft, 18 U.S.C. § 1344, Bank fraud, and 18 U.S.C. § 1029, Fraud and related activity in connection with access devices;

12. All records on the Computer(s) described in Attachment A that relate to violations of 18 U.S.C. § 1708, Theft or receipt of stolen mail matter generally, 18 U.S.C. § 1028, Identity theft, 18 U.S.C. § 1704, keys or locks stolen or reproduced,18 U.S.C. § 1344, Bank fraud, and 18 U.S.C. § 1029, Fraud and related activity in connection with access devices including:

   a. lists of individuals and victims involved in the violation of the above listed statutes and related identifying information to include communications;

   b. software programs, applications, pictures, and data related to the production of counterfeit documents to include identification documents and negotiable instruments;

   c. internet browsing activity related to the violations listed above;

   d. correspondence to any financial institution related to the violations listed above;

   e. all bank records, checks, credit card bills, account information, and other financial records.

   f. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.